UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

UNITED STATES OF AMERICA :

   -against- :

    :    No. 09 Cr. 137 (HB)

MICHAEL KEREKES, :    **OPINION & ORDER**

    :

        Defendant. :

------------------------------------------------------X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8-15-12_

**Hon. HAROLD BAER, JR., District Judge:**

Before the Court is the Government's application for an order of restitution to be imposed as part of the sentence of Defendant Michael Kerekes ("Kerekes"). The Government seeks restitution of $84,298,893.[1] Kerekes opposes the imposition of any restitution or in the alternative requests that any restitution amount be set at a fraction of the amount sought by the Government to reflect Kerekes' comparatively modest economic circumstances and low level of culpability. For the reasons set forth below, the Government's request for restitution is GRANTED as modified.

## Background

On February 13, 2009, Kerekes pleaded guilty to one count of conspiracy to defraud the Internal Revenue Service ("IRS") in violation of Title 26, Section 7201, 7206(1) and 7212(a) and one count of tax evasion of a BDO Seidman client's taxes, in violation of 26 U.S.C. § 7201 for the year 1999. On November 16, 2011, this Court sentenced Kerekes to a one-year sentence, six months incarceration, and six months home confinement, a $50,000 fine and a $200 special assessment, both of which Defendant paid.[2] The Court gave the parties 30 days to provide submissions on the restitution issue, after which I scheduled a hearing which was held on January 4, 2012. Thereafter the parties provided several rounds of supplemental submissions, most recently memoranda in response to a series of questions put to the Government by the Court on May 4, 2012.

---

[1] The most recent submission from the Government seeks $84,298,893, Gov't Mem. 5/18/2012, at 1, but in earlier submissions the Government sought different amounts.

[2] This sentence was amended on January 3, 2012 in conformity with 18 U.S.C. § 3624(c)(2).

## Discussion

The Mandatory Victims Restitution Act ("MVRA") provides that "the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1); *see also United States v. Walker*, 353 F.3d 130, 133-34 (2d Cir. 2003). Although this Order falls outside the 90-day window provided in MVRA, 18 U.S.C. § 3664(d)(5), it is nonetheless permissible. *Cf. Dolan v. United States*, 130 S. Ct. 2533, 2539 ( 2010) ("The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution."). As the court explained in *United States v. Ageloff*, 809 F. Supp. 2d 89, 108 (E.D.N.Y. 2011), *"the intent behind the 90-day period was not to protect defendants, but rather to protect victims from the willful dissipation of a defendant's assets."* I made it clear to both defense counsel and the Government that the order of restitution would not come down within the 90-day period and provided an additional 30 days for further submissions from the parties at the January 4, 2012 hearing. Neither party objected. Another concern not applicable to Kerekes is his ability to make restitution; the PSR notes that Defendant has ample resources to comply with this Order. Another caveat in the MVRA's mandatory restitution requirement is if "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process," 18 U.S.C. § 3663A(c)(3)(B), the order may be dispensed with, another concern not applicable here.

"If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). The concern is voiced by the Defendant as to whether the Court can impose individualized versus joint and several liability. This too is resolved by statute. Put another way, courts have discretion in deciding whether to apportion liability, *United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004), and in determining how must restitution to apportion to each defendant. *United States v. Salas-Fernandez*, 620 F.3d 45, 49 (1st Cir. 2010) ("[T]he court is not required to use any particular formula for apportionment or, indeed, to apportion the loss at all."). Finally, Defendant's

concern over whether restitution is permissible in spite of the forfeiture award against Deutsche Bank is addressed in the next section.

## A. Restitution is Permissible in Spite of the Forfeiture Award Against Deutsche Bank

Kerekes argues that restitution should not be ordered because Deutsche Bank has already forfeited $553,633,153 pursuant to a non-prosecution agreement ("NPA") and that payment was partially in lieu of restitution.

While there is "no problem" with an award of restitution and forfeiture in the same case, *United States v. Bengis*, 631 F.3d 33, 41 (2d Cir. 2011), a double recovery by a victim is prohibited. *United States v. Boccagna*, 450 F.3d 107, 115, 117 (2d Cir. 2006) ("[T]he purpose of restitution is essentially compensatory" and so "a sentencing court cannot order restitution that 'goes beyond making [the victim] whole.'") (internal citation omitted); *Nucci*, 364 F.3d at 424 ("[T]here is no legal basis to permit an award that allows a victim to recover more than his due."). As I view the record, we are nowhere near that point.

## B. The Restitution Award is Not Too Complex for Adjudication

Kerekes' complexity argument is easily resolved. While it is true that the IRS in its determination of the amount of tax loss attributable to BDO clients did not conduct a full audit of each taxpayer, it made estimates of the loss to the treasury attributable to each of the 19 taxpayers that utilized the BDO shelters. This was the conspiracy to which Kerekes pleaded guilty. The fact that the Government has not shown that Kerekes was directly involved with the taxpayers on the restitution list is immaterial. *United States v. Boyd*, 222 F.3d 47, 50-51 (2d Cir. 2000) (holding conspirators responsible for restitution of full amount of loss generated by conspiracy). For instance, there is a different tax rate associated with capital gains transactions and ordinary income transactions. Tr. 1/4/2012 Hrg. 14:2-5. Originally, in calculating the amount of the losses generated by each taxpayer, the IRS—generously in my view—applied the lower capital gain rate of 20 percent across the board rather than determining which rate actually applied to each individual. *Id.* at 14:6-11. In my letter to the Government dated May 4, 2012, I asked the Government to explain why. Court's Ltr. 5/4/2012. The Government responded that "[t]he character of the loss can be surmised from descriptions contained in the Jenkens & Gilchrist opinion letters, based on the type of asset contributed to the partnership by the taxpayer (stock in the case of a desired capital loss, and foreign currency in the case of a desired ordinary

loss)."[3] Gov't Mem. 5/18/2012, at 1-2. Using this formula, the Government reviewed the tax opinion letters, and concluded that of the 19 taxpayers that utilized BDO shelters, two of them, Flock and Harris, had ordinary losses. As a result, the Government's most recent submission calculated the taxes owed to the IRS using an ordinary income tax rate of 28 percent; *id.* at 2; however, the Government failed to offer any explanation for why a 28 percent ordinary tax rate, as opposed to some other tax rate, would be applicable to these transactions. Def. Mem. 6/1/2012, at 7 ("This assumed 28% rate is drawn from thin air, with no justification or explanation."). Under the circumstances, I adopt the 20 percent capital gains rate as the fairest, albeit at the same time the most conservative, way to calculate the losses incurred by the IRS, and the Government's proposed order will be adjusted accordingly.

The very language of the MVRA—"the court shall order restitution to each victim in the full amount of each victim's losses *as determined by the court*" (emphasis mine)— suggests that losses need not be calculated exactly nor ordered to be paid on a joint and several basis. 18 U.S.C. § 3664(f)(1)(A). A reasonable estimate of the IRS losses is permissible. *See United States v. Newsom*, 399 Fed. Appx. 625, 628 (2d Cir. 1010).

The restitution order in *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006), relied on by Kerekes, is distinguishable. In *Reifler*, the problem the Second Circuit identified there was not merely that the figure used by the government was inexact, but rather that the government included individuals in its restitution calculation who were clearly not victims within the meaning of the MVRA. *Id.* at 133 (concluding that the government had included accounts belonging to some of the defendant's co-conspirators). This concern is not relevant here where there is no dispute that the IRS is the victim. The issue to be resolved is not whether the IRS has suffered losses but rather whether the method used to ascertain that loss is an appropriate approximation.

For the five individuals for whom the IRS did not have the actual tax return showing the claimed losses and did not conduct an interview regarding the tax shelter losses (Baldwin, Gray,

---

[3] The Jenkens & Gilchrist law firm issued the opinion letters for each of the 19 transactions that supported the transactions. Mazzella Aff. 12/16/2011 ¶ 9. This letter was a prerequisite for BDO to prepare and sign tax returns reporting the benefits flowing from the shelter transactions. *Id.*

Hager and the Spains),[4] the IRS derived the IRS losses from "the long option or short sale proceeds amount, which for the J&G deals equated to the tax benefits taken on the returns." Mazzella Aff. 12/16/2011 ¶¶ 4, 10-11. At the hearing, IRS Special Agent Christine Mazzella ("Mazzella") acknowledged that in some instances the long option is greater than the tax benefit figure actually used; however, she stated that her figures were still conservative estimates because "I didn't charge any of the fees associated with this." Tr. 1/4/2012 Hrg. 56:25-26. Although the Government states that these individuals took all the steps necessary to generate a loss to the IRS, it cannot actually prove that the losses were incurred by the IRS because the IRS does not have a tax return and did not conduct an interview either with the individual or the BDO partner in charge of the tax shelter sale and implementation, and so cannot show that the individuals actually claimed the tax benefit and generated a loss to the IRS. Gov't Mem. 5/18/2012, at 3. The Government has had several opportunities to offer specific items of proof that these losses were sustained by the IRS. It has failed to do so, and consequently, the proposed order submitted by the Government will exclude any losses attributed to those transactions.

Restitution is an "essential part" of Kerekes' sentence in this conspiracy that put approximately $2 million in bonuses in his pocket.[5] Gov't Mem. 5/18/2012, at 6; *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003). The Government's estimate of the tax losses associated with the portion of the conspiracy to which Kerekes plead guilty are a reasonable estimate of IRS losses attributable to him. *United States v. Pescatore*, 637 F.3d 128, 139 (2d Cir. 2011); *see also United States v. Zangari*, 10-4546-cr, 2012 WL 1323189, at *18 (2d Cir. Apr. 18, 2012) ("[T]his may in the end be a case of salutary error, where the restitution award in fact understated the victims' actual losses."). It would undercut the stated purpose of the MVRA to determine that because the Government cannot prove losses as to all of the taxpayers and has

---

[4] *See* Mazzella Aff. 12/16/2011 ¶ 10 ("I and/or one of the prosecution team interviewed the following taxpayers on the chart about their tax shelter losses: Stephen Bernard, Arthur Frigo, Stanley Sher, William Schuett, Ann Schwartz, and Joanne Wiviott. (Sher, Schuett, Schwartz, Wiviott, and Ann Tugenberg (Wiviott's elderly mother), were part of a group led by Sher that participated in the tax shelters together. We also interviewed their BDO return preparer, David Weinberg.) In addition, I and/or one of the prosecution team interviewed the BDO partner in charge of the tax shelter sale and implementation for the following taxpayers: Michael Ambrose (Robert Dudzinsky), James Corkran (Robert Dudzinsky), Keith Eades and Glenn Cueman (Christopher Truitt), and Sam Flocks (Mark Puckett)).

[5] Kerekes claims that he received a smaller bonus amount for his tax shelter work; however, he provides no figure. Def. Mem. 6/1/2012, at 14.

used conservative estimates rather than undertaking the complex and costly project that a full calculation of the loss—if even possible—would entail, the IRS is not entitled to restitution. *United States v. Grimes*, 173 F.3d 634, 639 (7th Cir. 1999) ("[I]t could not have been the intention behind [18 U.S.C. § 3663A] to bar restitution to those victims who are identifiable merely because others are not.").

## C. It is Immaterial Whether the IRS Can Collect Taxes from Taxpayers Who Participated in the Shelters

Kerekes also argues that the Government has failed to meet its burden to establish the IRS losses because it has not demonstrated that the claims against the taxpayers are time-barred. Specifically, he alleges that for fraudulent tax returns, the IRS may assess delinquent taxes "at any time." 26 U.S.C. § 6501(c)(1). I can find no support, and Kerekes cites none, for the proposition that restitution from one offender is barred merely because a victim might be able to recover from other offenders. Rather, the IRS shall not be permitted to collect more than its loss so any amounts collected from delinquent taxpayers would reduce the amount due from Kerekes. *See Nucci*, 364 F.3d at 424 (concluding in case where one defendant was held liable for full amount of loss and others were held liable for parts of the same loss, the district court did not err in failing to "state explicitly that a victim's recovery shall be limited to the amount of its loss" because there is no authority for a victim to recover "more than his due").[6] Again, an argument that is hardly likely to come into play here.

## D. Restitution Should Be Apportioned

Kerekes' final argument opines that in the event that restitution is ordered, the Court ought to apportion the amount attributable to Kerekes pursuant to 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

The Second Circuit has suggested that joint and several liability may be inappropriate where, as here, there are multiple defendants spread across multiple judges (albeit in the same

---

[6] For example, Kerekes wrote to the Court to advise me that BDO had agreed to pay $50 million to the United States as a result of the fraud involving Kerekes. *See* Kerekes Ltr. 6/18/2012. To the extent that any of that money covers portions of the loss attributable to Kerekes, the Government must ensure that there is no double recovery.

jurisdiction). *See United States v. Aumais*, 656 F. 3d 147, 156 (2d Cir. 2011) (questioning whether "joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case (or indictment); . . . it would seem that the law does not contemplate apportionment of liability among defendants in different cases, before different judges, in different jurisdictions around the country"). The *Aumais* court's concern, double recovery by the victim, was addressed by the district court in *United States v. Hagerman*. No. 10 Cr. 0462, 2011 WL 6096505, at *17 (N.D.N.Y. Nov. 30, 2011) (imposing joint and several liability but directing the government to monitor restitution collection to ensure that the plaintiff did not double recover).

I conclude that it is appropriate to exercise my discretion and apportion liability individually, at least with respect to this Defendant and, as noted, I do so based primarily on his relatively modest role in this conspiracy. *See* 18 U.S.C. § 3664(h). Of the methods suggested by the Government and Kerekes to apportion his responsibility, the fairest approach is to hold Kerekes responsible for the amount of his bonus.[7] Kerekes' total bonus came to approximately $2 million. Mazzella Decl. 3/15/2012 ¶ 4.[8] While Kerekes asserts that given his minor role and limited resources, I ought to provide an even smaller percent of the total restitution amount, Def. Mem. 6/1/2012, at 13, I decline that invitation. Indeed, the fact is that Kerekes was in a better position than his co-conspirators to have stopped this fraud earlier when he testified under oath in depositions conducted during an audit of one of the taxpayers. Rather than help the Government, "he lied to the IRS . . . as part of the ongoing effort to defraud the IRS." Gov't Mem. 5/18/2012, at 6; *see also* Plea Tr. 2/13/2009, at 24:4-5. Only his cupidity stood in the way of offering help to the IRS and bringing this gigantic fraud to a halt. Taking all the relevant factors into consideration, an individual payment of restitution is the amount of $2 million is imposed. *United States v. Certified Envtl. Servs., Inc.*, 800 F.Supp.2d 390, 397-98 (N.D.N.Y. 2011) (apportioning liability among various individuals by ordering them to pay a percentage of

---

[7] Although Kerekes objects that the bonuses were not based solely on the tax shelter work, Def. Mem. 6/1/2012, at 14, I merely used this as a proxy for his involvement in the fraud. Despite ample opportunity, Kerekes also offered no calculation of what portion of his bonus *was* attributable to tax shelter work.

[8] The Government included Denis Field ($21,500,000), Charles Bee ($15,000,000), Adrian Dicker ($7,500,000), Robert Greisman ($2,800,000), Paul Daugerdas ($80,000,000) and Donna Guerin ($17,500,000) in this calculation. I conclude that Kerekes' argument that the Government was obligated to include Erwin Mayer is without merit because Mayer did not promote tax shelters with BDO. *See* Gov't Mem. 5/18/2012, at 7.

the total restitution amount in light of different amounts of culpability); *see also Salas-Fernandez*, 620 F.3d at 49 (upholding apportionment of equal amounts to responsible parties because "the court is not required to use any particular formula for apportionment or, indeed, to apportion the loss at all"). It will be the Government's responsibility to track any payments made to the IRS ultimately recovered from other co-conspirators and to ensure that there is no double recovery.

By my calculation, after the removal of the five taxpayers for whom the Government has provided no tax returns and conducted no interviews and reducing the tax rate for all taxpayers to 20 percent across the board, the total loss is $61,922,963.96 ($29,547,426.96 attributable to taxes owed and approximately $ 32,375,537.00 in interest).[9] Deducting the $8,345,436.00 recovered in the forfeiture from Deutsche Bank leaves a restitution amount of approximately $53,577,527.96, of which Kerekes' restitution amount is set at $2 million.

### Conclusion

I have considered the parties' remaining arguments and find they are without merit. For the foregoing reasons, the Government's request for a restitution order is GRANTED to the extent explained above. The Government is directed to submit a Proposed Restitution Order on notice in accordance with this Opinion and Order within 10 days of the date of this Opinion and Order.

**SO ORDERED.**

**New York, New York**
**August 1 5, 2012**

Hon. Harold Baer, Jr.
U.S.D.J.

---

[9] This figure will have to be adjusted in the Government's Proposed Restitution Order to reflect current interest owed.